Filed 11/15/21  P. v. Polk CA2/7

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| THE PEOPLE, | B305717 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. BA034657) |
| v. | |
| DARRYL JOHN POLK, | |
| Defendant and Appellant. | |

APPEAL from a postjudgment order of the Superior Court of Los Angeles County, Robert, J. Perry, Judge.  Affirmed.

Rudolph J. Alejo, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Senior Assistant Attorney General, Amanda V. Lopez and Nima Razfar, Deputy Attorneys General, for Plaintiff and Respondent.

Darryl John Polk, convicted following a jury trial of, among other crimes, two counts of first degree murder (Pen. Code, § 187, subd. (a))[1] with true findings as to felony-murder and multiple-murder special-circumstance allegations (§ 190.2, subd. (a)(3) & (17)), appeals the superior court's summary denial, of his petition for resentencing pursuant to section 1170.95. Polk contends the superior court's failure to appoint counsel and its consideration of evidence not heard by his jury in denying his petition require reversal. Because the record of conviction establishes that Polk is ineligible for resentencing as a matter of law, any error committed by the superior court was harmless. We affirm.

**FACTUAL AND PROCEDURAL BACKGROUND**

1. *Polk's Trial for Murder*

Polk was charged along with Tony Leater in an information filed April 17, 1991 with the first degree murders of Tanee Yemsvat and Kemika Seaeow, two counts of first degree residential robbery, two counts of second degree robbery and one count of first degree residential burglary. Multiple-murder and felony-murder special circumstances were alleged, as well as firearm-use enhancements and prior felony convictions for both defendants.

Our opinion affirming the judgments of conviction and denying Polk's petition for writ of habeas corpus describes the evidence presented at Polk and Leater's joint trial before separate juries. (*People v. Polk* (1996) 47 Cal.App.4th 944.)[2]

---

[1]  Statutory references are to this code.

[2]  Our opinion was certified for partial publication. The nonpublished portion of the opinion (*People v. Polk* (July 23,

The bodies of Yemsvat and Seaeow, Yemsvat's wife, were found at approximately 3:00 a.m. on February 13, 1991 in the back of their car, which was parked in the underground garage of their apartment building. Yemsvat's hands and feet were tied with nylon cord. He had been shot multiple times. A Gap denim jacket covered his head. Seaeow's wrists were bound; she had been shot twice. Neither victim was wearing shoes. A gold chain of Yemsvat's, which usually held a Buddha pendant, was found underneath the car. The victims' apartment had been ransacked. Yemsvat's shoes were missing. Bullets and casings recovered at the crime scene were from both .38- and .32-caliber guns.

Polk and Leater were tried before separate juries. Portions of the testimony of Phina Mendoza, Leater's former girlfriend, describing statements made by Leater that implicated Polk were not heard by Polk's jury. Mendoza testified Polk called around 8:00 p.m. on February 12, 1991. He asked Mendoza to have Leater page him. Between midnight and 12:30 a.m. Leater called Mendoza and said he and Polk were "on a mission" and were following some people. A few minutes into the call Leater said he had to hang up because the couple was coming out of an insurance company and leaving in a car.

Between 2:00 and 2:30 a.m. Leater came home, dressed in black and wearing gloves. He gave Mendoza an expensive lady's watch and $1,300 in $100 bills and showed her a Buddha pendant and a duffle bag filled with men's size seven shoes. (Both Yemsvat and Leater wore size seven shoes.) Leater told Mendoza he and Polk had robbed and killed the two Asians they

1996, B075043) rejected Polk and Leater's contentions errors in the special-circumstance instructions required reversal of those findings.

3

had been following earlier in the evening.  He said they had followed the couple into their parking garage, taken them at gunpoint upstairs to their apartment, tied them up after they robbed them and put them into the back of the couple's automobile.  Leater drove the car.  Polk wrapped a gun in his denim jacket and shot Yemsvat; he then took Leater's gun and shot Seaeow.  After the shooting Leater drove the car back to the underground parking garage, where they left the victims.  Leater told Mendoza he did not know Polk was going to kill the couple and was surprised when he did.

After Mendoza went to the police to report the crimes, both Leater and Polk were arrested.  (Mendoza gave the police Seaeow's watch and Yemsvat's Buddha pendant.)  A search of Leater's residence located a partially used box of .32-caliber ammunition of the same brand and type as found in the victims' bodies and car.  The police also found a duffle bag with men's size seven shoes, one pair of which was confirmed as having been purchased by Yemsvat several months earlier.  Hairs from a dog taken when Polk was arrested bore substantial microscopic similarities to dog hairs found on the passenger seat and hatchback portion of the victims' car.

The murder weapons were never found.  No fingerprints were recovered from any of the victims' belongings.

At trial Mendoza identified the Gap denim jacket found with the victims as resembling one that belonged to Polk.  According to our opinion, Polk tried on the jacket before the jury: "Apparently, the jacket fit Polk perfectly." (*People v. Polk, supra*, 47 Cal.App.4th at p. 950.)  Mendoza also testified she had seen Polk in possession of a handgun the month before the murder.

4

Following their arrest Polk and Leater were placed together in the backseat of a police car and left alone for 30 minutes with a hidden, activated tape recorder. Much of the recording of their conversation was either inaudible or very difficult to understand. Admissibility of an enhanced version of the recording and a transcript prepared by the lead detective was a central issue at trial. Portions of the tape and the transcript were admitted. As we described in our opinion, according to the transcript, which the jury used when the tape was played, "Leater asks Polk 'how many shots he got off' and Polk answers 'four.' When Leater says, 'the gun holds five,' the men laugh. Later Leater comments that if the police had the guns they would be booked. When Polk asks Leater if the police found the shoes during the search, Leater confirms they did." (*People v. Polk*, *supra*, 47 Cal.App.4th at p. 950.)

Both Leater and Polk presented alibi defenses. In addition, Polk's counsel presented his own transcript of the tape of the conversation in the back of the police car. The defense version was less incriminating, and it recorded Polk asking Leater how many shots he got off, rather than Leater asking Polk.

2. *Jury Instructions*

Before defining the elements of the crimes with which Polk was charged, the trial court instructed on the culpability of an aider and abettor using CALJIC Nos. 3.00 (Principals—Defined), 3.01 (Aiding and Abetting—Defined) and 3.02 (Principals—Liability for Natural and Probable Consequences). The court explained those who aid and abet the commission or attempted commission of a crime are equally guilty with those who directly and actively commit or attempt to commit the act constituting the crime.

5

The trial court instructed on murder using, in part, CALJIC Nos. 8.00 (Homicide—Defined), 8.10 (Murder—Defined), 8.11 ("Malice Aforethought"—Defined) and 8.20 (Deliberate and Premeditated Murder), as well as instructions on second degree murder. The court also instructed in the then-current language of CALJIC Nos. 8.21 and 8.27 on the felony-murder rule, explaining that a killing during the commission of robbery or burglary, even if accidental, is first degree murder and that all persons who aided or abetted the commission of robbery or burglary during which a killing occurs are guilty of first degree murder, whether the killing was intentional or accidental.[3]

---

[3] CALJIC No. 8.21, as given, stated: "The unlawful killing of a human being, whether intentional, unintentional or accidental, which occurs during the commission or attempted commission of the crime of Robbery or Burglary is murder of the first degree when the perpetrator had the specific intent to commit such crime. [¶] The specific intent to commit a Robbery or a Burglary and the commission or attempted commission of such crime must be proved beyond a reasonable doubt."

CALJIC No. 8.27, as given, stated: "If a human being is killed by any one of several persons engaged in the commission or attempted commission of the crime of Robbery or Burglary, all persons, who either directly and actively commit the act constituting such crime, or who with knowledge of the unlawful purpose of the perpetrator of the crime and with the intent or purpose of committing, encouraging, or facilitating the commission of the offense, aid, promote, encourage, or instigate by act or advice its commission, are guilty of murder of the first degree, whether the killing is intentional, unintentional, or accidental."

As to the special-circumstance allegations the court gave the introductory instruction, CALJIC No. 8.80.1, "If you find the defendant in this case guilty of murder of the first degree, you must then determine if one or more of the following special circumstances are true or not true: Multiple Murders, Murder Committed During the Course of a Robbery, and Murder Committed During the Course of a Burglary. [¶] . . . [¶] Unless an intent to kill is an element of a special circumstance, if you are satisfied beyond a reasonable doubt that the defendant actually killed a human being, you need not find the defendant intended to kill in order to find the special circumstances to be true. [¶] If you find that a defendant was not the actual killer of a human being, or if you are unable to decide whether the defendant was the actual killer or an aider and abettor, you cannot find the special circumstance to be true unless you are satisfied beyond a reasonable doubt that such defendant with the intent to kill aided, abetted, or assisted any actor in the commission of the murder in the first degree or with reckless indifference to human life and as a major participant, aided, abetted or assisted in the commission of the crime of Robbery or Burglary which resulted in the death of a human being, namely Tanee Yemsvat and Kemika Seaeow."

Specifically with respect to the multiple-murder special-circumstance allegation the court instructed, pursuant to CALJIC No. 8.81.3, "To find the special circumstance, referred to in these instructions as multiple murder convictions, is true, it must be proved: [¶] The defendant has in this case been convicted of at least one crime of murder of the first degree and one or more crimes of murder of the first or second degree."

7

### 3. *Verdict, Sentence and Appeal*

Polk's jury found him guilty on both counts of first degree murder, both counts of first degree robbery and the single count of first degree residential burglary (§ 459) and found true the felony-murder and multiple-murder special-circumstance allegations. The jury also found true the firearm enhancement allegations and the special allegation that Polk had suffered three prior felony convictions. The court sentenced Polk to two consecutive indeterminate state prison terms of life without parole plus a determinate nine-year state prison term.[4]

On appeal Polk and Leater argued admission of the largely unintelligible tape recording and the prosecution's transcript was prejudicial error, allowing evidence of uncharged offenses was also prejudicial error and errors in the special-circumstance instructions required reversal of those findings. Polk also filed a petition for writ of habeas corpus, which attached evidence outside the appellate record challenging the accuracy of the prosecution's transcript of the recording, contending the prosecution's transcript constituted "false evidence." He also argued his trial counsel was constitutionally ineffective in responding to the tape evidence. We rejected all of the arguments and concluded Polk's petition did not state a claim for relief.

With respect to the special-circumstance instruction we explained (in the nonpublished portion of our opinion) that section 190.2, subdivision (c), as amended in 1990 by Proposition 115 (and continuing to today), provided, for a special

---

[4] Leater's jury reached the same result except finding Leater had suffered two prior felony convictions.

circumstance other than the felony-murder special circumstance in section 190.2, subdivision (a)(17), to be found true as to a defendant who was not the actual killer, he or she must have acted with the intent to kill. Polk and Leater argued the trial court erred when instructing the jury by failing to expressly include that requirement for a true finding on the multiple-murder special circumstance. The Attorney General conceded such an instruction should have been given because the reckless indifference alternative included in the trial court's instruction applied only to the robbery/burglary felony-murder special-circumstance allegation. However, the Attorney General argued the error was harmless because the aiding and abetting instruction specifically required an intent to kill and the evidence of Polk's and Leater's actual intent to kill was so overwhelming the jury could not possibly have relied on reckless indifference in finding the multiple-murder special circumstance true.

We agreed. Initially, we stated a fair reading of the introductory special-circumstance instruction "limited the applicability of the mental state alternative of a 'reckless indifference to human life' to the felony-murder special circumstances of section 190.2, subdivision (d)." Nonetheless, we observed, "a clarifying instruction would have been both appropriate and helpful to the jury." More significantly, however, we held "it is inconceivable appellants' respective juries did not find the requisite intent to kill." We pointed out there was no conceivable reason why Leater and Polk drove the victims around after robbing them and tying them up in the back of their car unless they intended to shoot them at a location where the shots were less likely to be heard. After reviewing other evidence, including that which implicated Polk as the actual shooter, we

9

concluded, "Under the circumstances of this case it is not reasonably possible the jury found anything other than both appellants were actually the shooters or intended to kill their victims. Consequently, the lack of a clarifying instruction in this case must be deemed harmless beyond a reasonable doubt. (*Chapman v. California* (1967) 386 U.S. 18.)"

4. *Polk's Section 1170.95 Petitions for Resentencing*

On March 25, 2019 Polk, representing himself, filed a petition for resentencing under section 1170.95. Checking boxes on the printed form petition, Polk declared under penalty of perjury that he had been convicted of first or second degree murder pursuant to the felony-murder rule or the natural and probable consequences doctrine; could not now be convicted of first or second degree murder because of changes made to sections 188 and 189 by Senate Bill No. 1437 (2017-2018 Reg. Sess.) (Stats. 2018, ch. 1015) (Senate Bill 1437); and was not the actual killer, did not aid, abet or assist the actual killer in the commission of the murder with the intent to kill, and was not a major participant in the underlying felony or act with reckless indifference to human life during the course of the felony. Polk requested appointment of counsel during the resentencing process.

The superior court summarily denied the petition with a three-page order on April 10, 2019 without appointing counsel for Polk or inviting briefing by the prosecutor or Polk. After briefly restating the evidence at trial as summarized in our opinion affirming Polk's conviction, the court ruled Polk was ineligible for resentencing "because he was an actual killer." As an independent ground for denying the petition the court found

10

Senate Bill 1437 unconstitutional.  Polk did not appeal the denial of his petition.

On February 4, 2020 Polk filed a second petition for resentencing under section 1170.95, checking the same boxes as before and again requesting appointment of counsel.  Polk's second petition also attached exhibits, including material prepared by Dr. Roger Shuy, a linguistics professor specializing in the study of language and the recorded voice, which was basis for Polk's 1996 false-evidence habeas corpus petition, as well as a declaration from Leater, apparently signed in November 2001, asserting Polk had not been present during the robbery murders.  The superior court summarily denied the second petition without appointing counsel or requesting briefing, noting it was identical to Polk's earlier petition and attaching a copy of its prior ruling.  The court again stated Polk was ineligible for resentencing relief because he was an actual killer.  It did not repeat its ruling Senate Bill 1437 was unconstitutional.

Polk filed a timely notice of appeal.

## DISCUSSION

1. *Senate Bill 1437 and the Section 1170.95 Petition Procedure*

Senate Bill 1437 substantially modified the law relating to accomplice liability for murder, eliminating the natural and probable consequences doctrine as it applies to aiding and abetting and significantly narrowing the felony-murder exception to the malice requirement for murder.  (§§ 188, subd. (a)(3), 189, subd. (e)(3); *People v. Lewis* (2021) 11 Cal.5th 952, 957 (*Lewis*); see *People v. Gentile* (2020) 10 Cal.5th 830, 842-843 (*Gentile*).)  It also authorized, through new section 1170.95, an individual convicted of felony murder or murder based on the natural and

probable consequences doctrine to petition the sentencing court to vacate the conviction and be resentenced on any remaining counts if he or she could not have been convicted of murder because of Senate Bill 1437's changes to the definition of the crime. (See *Lewis*, at p. 957; *Gentile*, at p. 843.)

If a petition for resentencing contains all the information required by section 1170.95, subdivision (b)(1)(A), the court must appoint counsel to represent the petitioner, if requested; direct the prosecutor to file a response to the petition; permit the petitioner to file a reply; and determine if the petitioner has made a prima facie showing he or she is entitled to relief. (§ 1170.95, subd. (c); see *Lewis*, *supra*, 11 Cal.5th at pp. 962-963.) In determining whether the petitioner has carried this burden, the superior court properly examines the record of conviction, "allowing the court to distinguish petitions with potential merit from those that are clearly meritless." (*Lewis*, at p. 971.) Appellate opinions "are generally considered to be part of the record of conviction" (*id.* at p. 972), as are the jury instructions given at trial (see, e.g., *People v. Soto* (2020) 51 Cal.App.5th 1043, 1055, review granted Sept. 23, 2020, S263939).

The prima facie inquiry under section 1170.95, subdivision (c), "is limited. Like the analogous prima facie inquiry in habeas corpus proceedings, the court takes petitioner's factual allegations as true and makes a preliminary assessment regarding whether the petitioner would be entitled to relief if his or her factual allegations were proved. If so, the court must issue an order to show cause. . . . However, if the record, including the court's own documents, contain[s] facts refuting the allegations made in the petition, then the court is justified in making a credibility determination adverse to the petitioner." (*Lewis*,

*supra*, 11 Cal.5th at p. 971, internal quotation marks omitted];
see *People v. Daniel* (2020) 57 Cal.App.5th 666, 675, review
granted Feb. 24, 2021, S266336 [any error in denying petition at
prima facie stage without appointing counsel is harmless if the
record of conviction "conclusively demonstrates" petitioner is
ineligible for relief].)

If the section 1170.95, subdivision (c), prima facie showing
has been made, the court must issue an order to show cause and
hold an evidentiary hearing to determine whether to vacate the
murder conviction and resentence the petitioner on any
remaining counts. (§ 1170.95, subd. (d)(1).) At the hearing the
prosecution has the burden of proving beyond a reasonable doubt
that the petitioner is ineligible for resentencing. (§ 1170.95,
subd. (d)(3); *People v. Rodriguez* (2020) 58 Cal.App.5th 227, 230,
review granted Mar. 10, 2021, S266652; *People v. Lopez* (2020)
56 Cal.App.5th 936, 949, review granted Feb. 10, 2021, S265974;
but see *People v. Duke* (2020) 55 Cal.App.5th 113, 123, review
granted Jan. 13, 2021, S265309.) The prosecutor and petitioner
may rely on the record of conviction or offer new or additional
evidence to meet their respective burdens. (See *Gentile*, *supra*,
10 Cal.5th at pp. 853-854.)

2. *Any Error in Ruling Polk Was Ineligible for Resentencing Was Harmless*

As Polk contends, the superior court erred in considering
whether he had made the prima facie showing required by
section 1170.95, subdivision (c), before appointing counsel to
represent him. Once a petitioner files a facially sufficient
petition requesting counsel, the superior court must appoint
counsel before performing any prima facie review: "[P]etitioners
who file a complying petition requesting counsel are to receive

13

counsel upon the filing of a compliant petition." (*Lewis*, *supra*, 11 Cal.5th at p. 963.) Because Polk checked all the necessary boxes on his form petition, the superior court erred by denying his petition without first appointing counsel.[5]

However, the Supreme Court in *Lewis* also held a superior court's failure to appoint counsel to represent a petitioner before assessing whether he or she has made a prima facie showing of entitlement to relief, is state law error only, reviewable for prejudice under the harmless error standard of *People v. Watson* (1956) 46 Cal.2d 818. (*Lewis*, *supra*, 11 Cal.5th at pp. 957-958, 973-974.) Because, as we discuss, the record of conviction establishes Polk is ineligible for relief as a matter of law, there is no reasonable probability he would have obtained a more favorable result if counsel had been appointed and given the opportunity to file a memorandum supporting the petition. Accordingly, the court's error in failing to appoint counsel was harmless. (See *Watson*, at p. 836 [an error violating only California law is harmless unless "it is reasonably probable that

---

[5] Because we affirm the order denying Polk's petition for resentencing on the merits, we do not address the Attorney General's argument Polk's second petition was barred by collateral estoppel (issue preclusion). However, since one of the requirements for application of the doctrine is that the issue was "actually litigated" in the first lawsuit (*DKN Holdings LLC v. Faerber* (2015) 61 Cal.4th 813, 825), we would be hard pressed to hold the erroneous summary denial of a section 1170.95 petition without appointment of counsel, briefing or any sort of hearing qualified.

a result more favorable to the appealing party would have been reached in the absence of the error"].)[6]

3. *The Record of Conviction Establishes Polk Is Ineligible for Resentencing as a Matter of Law*

The trial court's instructions permitted the jury to find Polk guilty of first degree murder as the actual killer of Yemsvat and Seaeow, acting with the intent to kill (express malice) and premeditation; if it found Leater was the actual killer acting with premeditation, as a direct aider and abettor of Leater, sharing his intent to kill; or as a principal in the robbery of the victims or the burglary of their home under the felony-murder rule regardless of his mental state. As discussed, however, in rejecting Polk's argument the multiple-murder special-circumstance finding should be reversed based on instructional error (an error the Attorney General conceded), we held it was "inconceivable" Polk's jury did not find he had the requisite intent to kill in reaching its verdict, whether he was the actual shooter or assisted Leater's premeditated murder of the victims. (Cf. *People v. Chiu* (2014) 59 Cal.4th 155, 167 [if trial court instructed on legally correct and legally incorrect theories of guilt, the presumption of error is

---

[6] It was also error for the superior court to rely on portions of Mendoza's testimony admitted only in Leater's trial (notably, Mendoza's testimony that Leater told her Polk shot the victims) to conclude Polk was the actual killer. That evidence was not part of the record of conviction in Polk's case and, therefore, not properly considered in determining whether the allegations in Polk's petition had been conclusively refuted. Because the properly considered record of conviction establishes Polk is ineligible as a matter of law, however, this error, too, was harmless. (See *Lewis*, *supra*, 11 Cal.5th at pp. 973-974.)

15

rebutted and reversal is not required if the reviewing court concludes beyond a reasonable doubt the jury based its verdict on the legally valid theory].)

Because the record of conviction, including our opinion affirming the multiple-murder special-circumstance finding, established Polk acted with the intent to kill, even if he was not the actual shooter, he is ineligible for resentencing under section 1170.95 as a matter of law. (See *Lewis*, *supra*, 11 Cal.5th at p. 971 ["if the record, including the court's own documents, contain[s] facts refuting the allegations made in the petition, then the court is justified in making a credibility determination adverse to the petitioner," internal quotation marks omitted]; *Gentile*, *supra*, 10 Cal.5th at p. 848 ["Senate Bill 1437 does not eliminate direct aiding and abetting liability for murder because a direct aider and abettor to murder must possess malice aforethought"].)

In addition, Polk's jury found true not only the multiple-murder special-circumstance allegation but also the felony-murder special-circumstance allegation, which required the jury to find, if it had not concluded Polk was the actual killer or aided and abetted Leater to commit first degree murder, that Polk was a major participant in the robbery/burglary of Yemsvat and Seaeow and had acted with reckless indifference to human life. The Attorney General argues that finding means Polk could still be convicted of felony murder under amended section 189, subdivision (e)(3),[7] and, therefore, is ineligible for resentencing

[7] Section 189, subdivision (e), permits a felony-murder conviction only when the defendant was a participant in the perpetration or attempted perpetration of one of the serious felonies listed in section 189, subdivision (a), and was the actual

under section 1170.95 as a matter of law, even if the record of conviction did not conclusively establish he acted with the intent to kill as the perpetrator or direct aider and abettor of the murders.

Polk's trial took place long before the Supreme Court's clarification in *People v. Banks* (2015) 61 Cal.4th 788 (*Banks*) and *People v. Clark* (2016) 63 Cal.4th 522 (*Clark*) of the requirements for finding a defendant was a "major participant" and had acted with "reckless indifference to human life" for purposes of the felony-murder special-circumstance allegation, the elements now found in section 189, subdivision (e)(3).  In *People v. Harris* (2021) 60 Cal.App.5th 939, 954-958, review granted April 28, 2021, S267802, we rejected the Attorney General's argument a pre-*Banks*/*Clark* felony-murder special-circumstance finding, without more, preludes relief under section 1170.95.[8]  (Cf. *In re Scoggins*

killer (§ 189, subd. (e)(1)); although not the actual killer, with the intent to kill, assisted in the commission of the murder (§ 189, subd. (e)(2)); or was a major participant in the underlying felony and acted with reckless indifference to human life, "as described in subdivision (d) of Section 190.2," the felony-murder special-circumstance provision (§ 189, subd. (e)(3)).

[8]     The courts of appeal have disagreed whether a pre-*Banks*/*Clark* special-circumstance finding by itself precludes relief under section 1170.95.  (Compare, e.g., *People v. Secrease* (2021) 63 Cal.App.5th 231, review granted June 30, 2021, S268862; *People v. York* (2020) 54 Cal.App.5th 250, review granted Nov. 18, 2020, S264954; *People v. Torres* (2020) 46 Cal.App.5th 1168, review granted June 24, 2020, S262011; with, e.g., *People v. Nunez* (2020) 57 Cal.App.5th 78, review granted Jan. 13, 2021, S265918; *People v. Murillo* (2020) 54 Cal.App.5th 160, review granted Nov. 18, 2020, S264978;

17

(2020) 9 Cal.5th 667, 673-674 ["Where a decision clarifies the kind of conduct proscribed by a statute, a defendant whose conviction became final before that decision 'is entitled to post-conviction relief upon a showing that his [or her] conduct was not prohibited by the statute' as construed in the decision. [Citation.] 'In such circumstances, it is settled that finality for purposes of appeal is no bar to relief, and that habeas corpus or other appropriate extraordinary remedy will lie to rectify the error'"].)

Nonetheless, we agree with the Attorney General's alternate argument that the record of conviction establishes as a matter of law that Polk was a major participant in the robbery/burglary and acted with reckless indifference to human life as defined in *Banks* and *Clark*. (See *People v. Secrease* (2021) 63 Cal.App.5th 231, 264, review granted June 30, 2021, S268862 [at the section 1170.95, subdivision (c), prima facie entitlement-to-relief stage of the process, the court, without resolving conflicts in the evidence and making findings, may consider whether the evidence at a pre-*Banks*/*Clark* trial supported the felony-murder special-circumstance finding under *Banks* and *Clark*]; *People v. Harris*, *supra*, 60 Cal.App.5th at p. 958, review granted ["the superior court could properly determine [petitioner] was ineligible for relief as a matter of law only after reviewing the record of conviction in light of the *Banks* and *Clark* factors"].)

As discussed, Polk's alibi defense was not credited by the jury and his challenge to the use of his tape-recorded conversation in the patrol car was rejected in his appeal and

---

*People v. Galvan* (2020) 52 Cal.App.5th 1134, review granted Oct. 14, 2020, S264284.) The issue is pending before the Supreme Court in *People v. Strong*, review granted March 10, 2021, S266606.

habeas corpus petition. The trial evidence thus established Polk was Leater's full partner in committing the crimes. Whether Polk shot Yemsvat and Seaeow or drove their car while Leater executed the bound victims in the backseat, he indisputably was a major participant in the robbery/burglary who acted with reckless indifference to human life viewed in light of the *Banks* and *Clark* factors, which include evaluating the defendant's awareness of the dangers posed by the crimes being committed and whether he or she was at the scene of the killing and acted in a manner that facilitated the murder (*Banks*, *supra*, 61 Cal.4th at p. 803) and whether the defendant had an opportunity to reduce the overall risk of violence or otherwise aid the victim and failed to do so (*Clark*, *supra*, 61 Cal.4th at pp. 619-622).

In sum, the record of conviction conclusively demonstrates Polk could still be convicted of murder notwithstanding Senate Bill 1437's amendments to sections 188 and 189, and he is ineligible as a matter of law for resentencing under section 1170.95. The error in not appointing counsel before denying his petition was harmless.

## DISPOSITION

The postjudgment order denying Polk's motion for resentencing under section 1170.95 is affirmed.

                    PERLUSS, P. J.

We concur:



    SEGAL, J.            FEUER, J.

19